NEW-YO K,

The People
vs
John Byrd.

*David Graham*, for the prosecution, objected to the testimony, on the ground that the fact relative to the suit in question was wholly irrelevant, and the opposite side must take the answer of the witness as he stated it, and ought not to be permitted to contradict it.

---

## The People *vs.* John Byrd. *False Pretences.*

If, after effecting insurance on certain articles against their loss by fire, shall wilfully and corruptly affirm as to the loss of an article not destroyed; and onprsenting such affirmation,(one being required by the rule of the company,) shall receive from its officers the a-

THE defendant one of the Society of Friends, was indicted for obtaining from the Washington Insurance Company, and from James Swords, President, and Peter Hawes, Secretary of said Company, a check on the Union Bank for $3162 67, by *exhibiting to the Company, through* those officers, an affirmation, in writing, taken before Joseph Dodge, Esq., of Flushing, Queens County, on the 20th of February, 1820, stating, that a certain *second carding machine*, of the value of $350, set forth in a statement of the loss of certain goods, destroyed by fire on the 16th of the same month, annexed to the same affirmation, was, among other things, so destroyed.

The indictment, by way of recital, stated, in effect, that

the defendant, on the 10th of the same month, effected insurance on certain machines and things appertaining to a wollen factory at "The Alley," in the town of Flushing, which things were set forth in the indictment; that on the 16th of the same month the factory was destroyed by fire; and that on the 23d he made the affirmation. which is also set forth, stating that the *second carding machine* was destroyed; and, by the exhibition of this affirmation to the Company, he falsely and fraudulently obtained the said check—whereas the said second carding machine was not destroyed by fire, &c.

NEW-YORK,

The People,
*vs.*
John Byrd.

mount of such article, by means of such affirmation, he is guilty, under the act, of obtaining that amount by false pretences.

In the conclusion of the indictment, it stated, in effect, that he obtained from the Company, by means of the false pretences as aforesaid, one check, for the payment of money, commonly called a bank check, on the Union Bank, for the sum of $3,122 67, and of the value of $3,122 67, which said check is in the following words and figures : "Cashier of the Union Bank, pay to —— or bearer three thousand one hundred and sixty-two dollars and sixty-seven cents," &c. The check produced in evidence corresponded with that set forth in *hœc verba*.

It appeared that the defendant, carrying on this factory at the place set forth in the indictment, sometime before the insurance was effected, through Benjamin Clark, Esq., of this city, his agent, exhibited to the Company a paper enumerating the articles to be insured, with their respective values annexed, made out by David Titus, a friend, who did business at the factory; and in this paper this *second carding machine* was set forth, valued at $350. Other articles, appertaining to the factory, for some reason which did not appear, were not contained in the paper, and were not insured ; and among these was a machine worth as much as that in question. The defendant left

NEW-YORK,
The People
*vs.*
John Byrd.

this paper with his agent, and did not return to this city until the day after the fire, when he expressed much anxiety lest the insurance had not been effected; and, pursuant to Clark's advice, he called on the officers of the Company, and stated his loss. They handed him his policy, and told him that on making such proof, by way of affirmation, as their rules required, the sum for which the articles were insured should be paid. The same day he made the affirmation, which was drafted or dictated by Clark; but by reason of its not setting forth the articles destroyed properly, this affirmation was not acted on; and he then returned to Flushing, and on the 23d of February affirmed to the one upon which the money was paid, before Dodge, the Justice, and brought it back to this city, and left it with Clark, who received the money and deposited it in the Franklin Bank, from whence, in a short time, it was drawn in small drafts in favor of the defendant's creditors, as his counsel alleged.

The amount of the proof, in relation to the *second carding machine*, was, that it was bulky; that the defendant was a miller, and had his mill, which he attended, a short distance from the factory; that about a month before the insurance was effected, this machine was taken from the factory and put into the mill, in open view, another being substituted in its place. He had purchased the machine in question of one William R. Lowere, on credit; and after the loss of the factory, Lowere, who knew that the defendant had received the amount insured on the article, called on him for payment, and threatened him that if he did not pay him, he would expose him; and, not being satisfied, he gave information to the Company. It further appeared, that the defendant, about this time, was embarrassed, and, ultimately, took the benefit of the act,

freeing him from imprisonment.     A number of witnesses
affirmed in his favor that they had known him several
years, and before this, had never heard any thing against
his character.     One of them, Charles Wright, on being
asked by the Court what reason the defendant gave for
not refunding the $350 to the Company, answered, that
he insisted that he had a right to it, for he had lost many
articles which were not insured ; and on Wright's endea-
voring to convince him that he had no such right, and
ought to refund the money, the defendant said that he
could not, for he had paid it all away to his creditors.

NEW-YORK,

The People
vs.
John Byrd.

Before the defence was opened, the counsel for the de-
fendant raised several questions of law as to the validity
of the indictment.     The following is the principal one :
They contended, that inasmuch as the averment, in the
conclusion of the indictment, stated a check different from
the one set forth in *hæc verba*, and that produced in evi-
dence ; and as that averment contains the only allegation
of value in the indictment, value of the check set forth
could not be predicted on the averment; and it there-
fore followed that the check set forth was one of no value :
at any rate, there was a fatal variance between that aver-
ment and the evidence produced in its support.     They ci-
ted 2 Burr. 1127 ; Hawk. P. C. B. 2, C. 25, § 83 ; 4 Term
Rep. 490.

It was argued on the part of the prosecution, that there
was no variance ; that the averment of value applied to
to the check set forth and produced, according to the strict
rules of grammatical construction ; and that if the aver-
ment had stated the value but at one dollar, it would have
been sufficient.     In this indictment the false pretense re-
sorted to is the *gravamen* ; and that is sufficiently set forth.

The Recorder thought that as this was a matter ap-

NEW-YORK.

pearing on the face of the Record, of which the defendant might avail himself, if convicted, that it would be better to have the case go to the jury upon the facts.

After the testimony was closed, it was submitted by the respective counsel without summing up.

The Recorder, after bringing to view the preminent facts, charged the jury, that if they believed, from the circumstances, that the defendant obtained the $350 from the Company, the amount of the machine, knowing the allegation in the affirmation, of its destruction by fire, to be false, it would be their duty to convict him. If there was a mistake, on his part, they ought to acquit him.

The jury retired, and in about three hours returned with a verdict of not guilty.

NOTE.—The conclusion of an indictment, for obtaining a check by false pretences, stated, in effect, that the defendant obtained a check for $3,122 67, on the Union Bank of the value of $3,122.67, which said check in the following words and figures, (setting forth a check for 3,162 67, in *hæc verba;* the check produced in evidence, being for $3,162 67,) *Quere.* Is such an indictment good?